In the Matter of the Claim of HAROLD CARPENTER, Respondent, against CITY OF NEW YORK, Appellant.

WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, July 8, 1954.

*Adrian P. Burke, Corporation Counsel* (*Edward J. Russel, Seymour B. Quel* and *Joseph J. Lucchi* of counsel), for appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Gilbert M. Landy, Roy Wiedersum* and *Harry Pastor* of counsel), for Workmen's Compensation Board, respondent.

HALPERN, J.  The claimant was employed as a court attendant in the County Court of Kings County.  On the seventh floor of the County Courthouse there was a detention pen in which prisoners, whose presence was needed for court proceedings, were temporarily held.  The prisoners were brought from the Raymond Street jail to the detention pen by the employees of the department of correction of the City of New York and they were guarded, while in custody in the detention pen, by employees of that department.

When a prisoner was needed in a courtroom on one of the floors below, a court attendant would come for him and he would be turned over to the attendant by the guard and he would then be escorted by the attendant to the courtroom.  On some occasions, an employee of the department of correction accompanied the court attendant.  It was the court attendant's duty to guard the prisoner through the corridors and on the stairways on the trip to the courtroom and to guard him in the courtroom as well.

On March 13, 1952, while the claimant was escorting a prisoner from the detention pen to a courtroom on the sixth floor, the prisoner attempted to escape, whirled around suddenly, and pulled the claimant down a flight of stairs.

The claimant suffered back injuries which have required medical attention and may require surgery in the future.  It is principally because of the medical expenses, past and prospective, that this claim for workmen's compensation is pressed.  The claimant has suffered no loss of wages, since the city paid him his full salary during the period of his disability.

The question is whether the claimant comes within group 15 of subdivision 1 of section 3 of the Workmen's Compensation Law. At the time of the occurrence of the injury, the statute read (L. 1936, ch. 711):

" § 3. *Application.*

" 1. Hazardous employments. Compensation shall be payable for injuries or death incurred by employees in the following employments: * * *

"Group 15. Employment as a keeper, guard, nurse, interne or orderly in a prison, reformatory, insane asylum or hospital maintained or operated by a municipal corporation or other subdivision of the state, notwithstanding the definitions of the terms ' employment,' ' employer ' or ' employee ' in subdivisions three, four and five of section two of this chapter."

The board held that the claimant was covered by the Workmen's Compensation Law on one of two theories: (1) that in escorting prisoners to the courtrooms, court attendants are engaged in employment as keepers or guards in a prison; (2) that, even if this work is not enough of itself to bring the court attendants within the statutory classification, the other duties of court attendants are such as to make them keepers or guards in a prison within the meaning of the statute.

The first theory is obviously untenable. We may accept the view of the board that the detention pen on the seventh floor of the County Courthouse is a prison within the meaning of the statute but a court attendant, in escorting a prisoner from the detention pen to the courtroom, is not engaged in employment as a guard in a prison. He may be guarding the prisoner but he is not guarding him in the prison. In a trip from the prison to the courtroom, the walls of the prison are not extended so as to continue with the prisoner throughout the trip. Under the board's theory, a court attendant who guarded a prisoner in the courtroom would likewise be said to be engaged as a guard in a prison. We cannot accept this view. The word " prison " is used in the statute to designate an institution in which prisoners are regularly held in custody. The word is used in association with the words " reformatory, insane asylum or hospital ", all words connoting an institution in which custody or care is provided. Neither the courtroom nor the corridors nor stairways of the court building outside the detention pen constituted a prison within the meaning of the statute.

We also find the board's second theory to be untenable, although this aspect of the case presents greater difficulty. It appears that, on a rotation basis, the court attendants were regularly assigned for three-month periods to keep records of the prisoners received at, and withdrawn from, the detention pen. However, the court attendant so assigned was not stationed within the detention pen. He was assigned to an office or room immediately outside the locked doors of the detention pen and there made entries in a book in which the record of the prisoners was kept. In emergency situations, when the guards in the detention pen required help to subdue or guard a recalcitrant prisoner, the court attendant would be called into the detention pen. The outer door of the detention area would have to be unlocked and the court attendant admitted to that area in order to enable him to give assistance.

We do not believe that these duties of the court attendant made him a keeper or guard in a prison. The clerical duties obviously did not make him a keeper or guard; not only was the work of a nature different from that of a keeper or a guard, but the work was performed not in the so-called prison but in an adjoining part of the courthouse. The response to a call for help in an emergency put the court attendant in the position of temporarily assisting in the performance of the duties of a guard but this did not alter the nature of his employment. He was still a court attendant temporarily called upon to do guard work (*Matter of Ryan* v. *City of New York,* 228 N. Y. 16).

The board relies upon the principle of *Matter of Gramlich* v. *Board of Educ.* (297 N. Y. 349) to support its decision but that reliance is misplaced. The *Gramlich* case dealt with group 17 of subdivision 1 of section 3 which provides in general terms that any municipal employee engaged in an employment " enumerated in the foregoing groups " is included in the coverage of the Workmen's Compensation Law. The " foregoing groups ", referred to in group 17, are groups 1 to 14 which define various types of work or activities as hazardous employments within the meaning of the Workmen's Compensation Law. Group 17 of the revised Workmen's Compensation Law (L. 1922, ch. 615) was derived from group 43, as added by chapter 622 of the Laws of 1916. The foregoing groups referred to in group 43 were groups 1 to 42, which in the 1922 revision, became groups 1 to 14.

In the *Gramlich* case, it was held that if the " general work or occupation " of the claimant included work which was listed in one of the groups 1 to 14, he was covered by the Workmen's Compensation Law even though the listed work constituted only part of his duties and even though the injury was suffered in doing work of an unlisted character.

This principle is not applicable to the present case. First of all, the occasional response to a call for help by a prison guard did not make this a part of the " general work or occupation " of the court attendants. But apart from this, the principle of the *Gramlich* case is applicable only to work described in groups 1 to 14, upon which the coverage of municipal employees under group 17 depends. The work of a keeper or guard in a prison is not to be found in any of the groups numbered from 1 to 14.

The only reference to work as a keeper or guard in a prison is to be found in group 15. Group 15 is not one of the groups describing work or activities, the engaging in which brings a municipal employee within compensation coverage. It is a separate statute directly dealing with municipal employees who are employed in a specified capacity in specified institutions. Group 15 deals only with " Employment as a keeper, guard," etc. The claimant must stand or fall on the theory that he comes directly within group 15. He cannot base his claim upon group 17 and use part of the substance of group 15 as describing a kind of work which results in his coverage under group 17.

Group 15 was derived from group 44 which was added by a special statute (L. 1917, ch. 705), adopted a year after the enactment of the statute dealing with municipal employees generally (L. 1916, ch. 622 adding group 43, which later became group 17). Groups 43 and 44 were transposed in the 1922 revision of the Workmen's Compensation Law and became respectively groups 17 and 15 but there is nothing to indicate that this transposition was meant to bring about any change in meaning.

In order to come within group 15, the claimant must show that he was employed as a keeper or guard in a prison. Concededly, he was not so employed. He was regularly employed as a court attendant; at certain times of the year, he was assigned to clerical work in connection with the detention pen (he was not so assigned at the time of his injury) and, during the period of such an assignment, he might occasionally be called upon to help the keeper or guard in the detention pen but this did

not change his employment to that of a keeper or guard in a prison.

The case of *Matter of Ryan* v. *City of New York* (*supra*) dealt specifically with group 44 which became group 15. The court held that a policeman who was assigned to guard prisoners at a police station did not thereby become a prison keeper or guard within the meaning of the statute. Despite the changes in the language and construction of the Workmen's Compensation Law which have occurred since the decision of the *Ryan* case, we believe that case is still controlling with respect to group 15. So far as here relevant, the language of that group has remained unchanged. The group still applies only to a particular class of municipal employees employed in designated capacities. The coverage of the group does not extend to other employees employed in other capacities, who may temporarily perform some of the duties of employees of the designated class. A court attendant who occasionally helps to guard a prisoner is still a court attendant and not a prison guard.

The decision of the Workmen's Compensation Board should be reversed and the claim dismissed.

Foster, P. J., Bergan, Coon and Imrie, JJ., concur.

Decision of the Workmen's Compensation Board reversed and claim dismissed, with costs to appellant against the board.